# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LUCY B. PRADA,

    Plaintiff,

    vs.                                            No. CIV 99-0017 JC/WWD (ACE)

WAL-MART STORES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment, filed October 29, 1999 *(Doc. 15)*. This is an employment case wherein Plaintiff first asserted both sexual harassment and retaliatory discharge claims. Plaintiff now agrees to dismiss the retaliatory discharge claim. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. (Br. in Opp'n) at 2, filed Nov. 29, 1999 *(Doc. 18)*.[1] The remaining sexual harassment claim will, therefore, be the subject of this Memorandum Opinion and Order.

## I.    Background

Defendant hired Plaintiff as a maintenance worker at the Farmington, New Mexico Wal-Mart store in March 1995. Ex. A at 1, attached to Def.'s Br. in Support of Mot. for Summ. J., filed Oct. 29, 1999 *(Doc. 16)*).[2] Plaintiff alleges that the day after she began work at Wal-Mart, a

---

[1] Although Plaintiff's brief in opposition to this motion for summary judgment does not comply with D.N.M.LR-Civ. 56.1(b), I will nonetheless consider her brief because of the upcoming trial date of March 7, 2000.

[2] All further references to exhibits marked with a letter will be to exhibits attached to Defendant's brief in support of motion.

stockman/cartpusher, James Sena, began to repeatedly ask her to go out with him and subsequently made it clear that he wanted to have sex with her. *See* Ex. I, Dep. of Lucy B. Prada. Sena allegedly also followed Plaintiff around the store and stared at her. *Id*. Plaintiff states that she refused his advances. *Id*. Even so, prior to February 1996, Plaintiff asked Sena to go to her house to do some repairs. *See* Ex. E at 11-12, Dep. of Ramos Vigil; Ex. F at 15 and 19, Dep. of Anthony Urbina; Ex. G at 8-9, Dep. of Thomas F. Lane. While at Plaintiff's home, Sena allegedly asked Plaintiff to go out with him and she refused his offer. *Id*.

Plaintiff asserts that she first complained about Sena's continued misconduct at the store to assistant store manager Terry Fite. Ex. I at 23. The harassment apparently stopped for a short time after Fite met with Plaintiff and Sena in February or March of 1996 and told them to leave their personal differences at home. *Id*.; Ex. B, Aff. of Ramos Vigil. In May 1996, after the alleged harassment began again, Plaintiff spoke to Bonnie Larson, another assistant store manager, about her problems with Sena. Ex. H at 11-12, Dep. of Bonnie K. Larson. The meeting with Larson did not affect Sena's behavior. Sena allegedly continued to ask Plaintiff out once or twice a week. App. #1 at 28, Dep. of Lucy Prada (attached to Br. in Opp'n).

Sometime after February 1996, Plaintiff also spoke to Danny Clemmens,[3] the store manager, about Sena. *Id*. That same day, Sena apparently became the team leader for the cartpushers as well as maintenance. Ex. I at 24. As team leader over maintenance, Sena had no authority to determine Plaintiff's hours of work or her schedule nor could he evaluate Plaintiff's performance or discipline her. Ex. B. According to Plaintiff, Sena, however, indicated to her that if she went out with him he would give her weekends off. Ex. I at 24.

---

[3] Clemmens is deceased.

After Sena became the team leader over maintenance, he allegedly verbally abused Plaintiff with sexually charged epithets, cursed at her in front of customers, and told her that he was "good" in bed. *Id*. at 36-37. Plaintiff also alleges that Sena threatened to put unpaid Wal-Mart merchandise in her truck if she did not go out with him. *Id*. at 32. As a result of the continued alleged harassment, Plaintiff complained to Ramos Vigil, a management trainee, about Sena's behavior. Ex. B.

After March 1997, Plaintiff apparently continued to complain to management about Sena's conduct indicating that Sena kept asking her out and was angry when she refused. *Id*. at 32-40. Plaintiff, for example, complained about Sena's behavior by speaking to Pat Beckett, the personnel manager. Ex. J at 6, Dep. of Patricia Beckett. Plaintiff also spoke with Johnnie Reid, a co-manager, about Sena. Ex. C, Aff. of Johnnie Reid. As a result of her conversation with Reid, Reid told Sena to be respectful, polite and professional. *Id*.

Prior to July 1997, Sena was removed as team leader over maintenance. Ex. B. Sena apparently continued to allegedly harass Plaintiff at the store. Plaintiff then complained to store manager, Anthony Urbina, about Sena sometime after Urbina started working at the store in July 1997. Ex. F at 10-13. In August of 1997 and after her meeting with Urbina, Plaintiff spoke with Cleo Riley, a loss prevention officer at the store, and Tom Lane, a district loss prevention manager, about Sena's harassment. Ex. G at 7-10; Ex. K at 7-8, Dep. of Cleotilde Riley. Lane interviewed two female employees at the store who stated that while at work Sena asked them out. Ex. G at 10-11, 13. Shortly thereafter, Defendant terminated Sena for his inappropriate behavior and admission of the use of foul language. *Id*. at 14; Ex. E at 16.

Although Plaintiff claims she reported sexual harassment to management prior to the August 1997 investigation by Lane, Defendant's management personnel indicate through affidavits

and deposition testimony that Plaintiff only complained to them about how Sena picked on her, complained about her work, followed her, "bothered" her, looked at her, gave her unpleasant projects, and was bossy towards her. Exs. B, C, D, F at 12-13 and 15, H at 9, and J at 6. The management personnel also indicate that Plaintiff was frustrated with Sena and noted that he irritated and aggravated her. Ex. B; Ex. E at 12 and 14. Finally, the management personnel noted that Plaintiff stated that Sena asked her out only once when he was at her home, not at the store. Exs. E at 12, F at 15 and 19, and H at 11-12.

## II.     Summary Judgment Standard

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Thrasher v. B & B Chem. Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**III. Discussion**

Defendant makes the following arguments in support of this motion for summary judgment: Plaintiff was not subject to a sexually hostile work environment; Sena was not her supervisor; Plaintiff failed to show that Defendant knew or should have known of the alleged sexual harassment; Defendant took prompt appropriate remedial action; and Plaintiff unreasonably failed to use Defendant's policies and procedures for reporting the alleged sexual harassment.

*A.     Was there a sexually hostile work environment?*

For a hostile work environment claim to be actionable, the sexual harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation omitted). To demonstrate that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment one must show that 1) the harassing conduct is "severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive;" and 2) the plaintiff must "subjectively perceive the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In analyzing the objective and subjective elements, the court must look at all the relevant circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. Thus, for Plaintiff's lawsuit to survive summary judgment, Plaintiff is required to submit sufficient admissible evidence upon which a reasonable jury could find that Sena had created both an objectively and subjectively sexually hostile work environment. *See Davis v. United States Postal Service*, 142 F.3d 1334, 1341

(10th Cir. 1998). The Court observes "that the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999) (quotations omitted).

In analyzing the objective component of the hostile work environment test, the Court notes that "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *Id*. at 1097. Furthermore, Plaintiff may utilize evidence of Sena's conduct toward other women to demonstrate discriminatory intent. *Jessen v. Babbitt*, ___ F.3d ___, 1999 WL 1246915 at *3 (10th Cir. 1999) (citations omitted). Similarly, the Court can consider any admissible evidence of Sena's inappropriate conduct toward other women, if Plaintiff was aware of that conduct. *Id*. at *4.

In this case, Plaintiff stated in her deposition testimony that Sena would ask her out at least once or twice a week at the store and at least on one occasion called Plaintiff a sexually derogatory name in front of another employee in a public part of the store causing Plaintiff to cry. Plaintiff stated that Sena would also cuss at her in front of customers and talk "dirty" to her by saying he was "good" in bed. At one point, Plaintiff stated that Sena threatened to put unpaid merchandise in her truck if she did not go out with her. Plaintiff also stated in her deposition testimony that she told several management people about being frequently asked out by Sena as well as being followed and stared at by Sena at the store. According to Defendant's evidence, Plaintiff complained to management only about Sena being bossy, picking on her, complaining about Plaintiff's work, and giving her unpleasant projects. Yet Defendant's evidence also suggests that Plaintiff told management that Sena followed her in the store, bothered her, and looked at her, actions that could be construed as being consistent

with allegations of sexual harassment. Moreover, it is undisputed that Sena asked at least two other female employees out while on the job. Plaintiff was aware of that conduct with respect to at least one of those women.

The above allegations by the parties create a genuine dispute of material fact regarding whether Plaintiff's complaints to management prior to August 1997 described a sexually hostile work environment. Moreover, if Plaintiff complained about Sena being "bossy" toward her and picking on her, such facially neutral conduct when viewed in the context of Plaintiff's allegations of Sena asking her out, following her, staring at her, and calling her sexually derogative names could support a finding of gender animus. Additionally, Sena's behavior towards two other female employees and Plaintiff's knowledge of that behavior towards at least one of the women also lends itself to objectively establishing a sexually hostile work environment. In sum, I find that Plaintiff submitted sufficient admissible evidence upon which a jury could reasonably find that Sena created an objectively sexually hostile work environment.

Under the subjective element of the hostile work environment test, Plaintiff stated in her deposition testimony that she "had enough of [Sena]" when she spoke with Beckett and Clemmens. Ex. I at 22, 24. Plaintiff also told Clemmens that she was sick and tired of Sena asking her out. *Id*. at 29. After Sena became team leader over maintenance, Plaintiff characterized her job as "a living hell." App. #1 at 25. Plaintiff further stated that she was desperate for help and would have quit her job except that she needed her job. Ex. I at 31, 35-36. Finally, Sena made Plaintiff cry after calling her a sexually derogatory name in front of a co-employee. *Id*. at 39-40. I find that Plaintiff has shown sufficient admissible evidence upon which a jury could reasonably find that Sena created a subjectively sexually hostile work environment. Because a genuine issue of material fact exists

regarding both the objective and subjective elements of the hostile work environment test, summary judgment is not appropriate on this ground.

  B.  *Was Sena Plaintiff's supervisor?*

Defendant argues that Sena had neither the quantity nor quality of authority to be a supervisor as envisioned in Title VII and the New Mexico Human Rights Act. Plaintiff conceded in her brief in opposition at 2 that Sena was not a supervisor and that Defendant cannot be strictly liable for Sena's sexual harassment of Plaintiff.

  C.  *Was Defendant actually or constructively*
     *aware of the alleged sexual harassment?*

In order for an employer to be held liable for maintaining a sexually hostile work environment created by the harassment of one employee against another, the plaintiff must demonstrate that the employer negligently or recklessly failed to respond to the harassment. *See Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 577 (10th Cir. 1990). "This liability attaches when a plaintiff establishes that an employer had actual or constructive notice of the hostile work environment and failed to respond adequately to that notice." *Davis*, 142 F.3d at 1342. In this case, Defendant, through the deposition testimony and affidavits of the relevant management personnel, denies any complaints of sexual harassment at the store prior to August 1997. Rather, Defendant asserts that there was a personality conflict between Plaintiff and Sena. Defendant further presented evidence that the management personnel were aware of only one incident where Sena asked Plaintiff out after she invited Sena to her home. On the other hand, Plaintiff testified in her deposition that she orally informed several management members of the alleged sexual harassment over a lengthy period of time. Viewing the record in the light most favorable to Plaintiff, I find that Plaintiff has established

a genuine dispute of material fact as to whether Defendant actually or constructively received notice of the alleged sexual harassment prior to August 1997. Summary judgment is, therefore, inappropriate on this ground.

> D. *Did Defendant take prompt appropriate remedial action?*

It is undisputed that Defendant took prompt appropriate remedial action after Plaintiff complained of sexual harassment in August 1997. The question of whether Defendant took prompt remedial action prior to August 1997 hinges on whether Defendant had actual or constructive notice of the alleged sexual harassment prior to August 1997. That being so, summary judgment is not appropriate on this basis.

> E. *Did Plaintiff unreasonably fail to use Defendant's policies and procedures for reporting the alleged sexual harassment?*

Defendant further argues that Plaintiff unreasonably failed to use Defendant's policies and procedures for reporting the alleged sexual harassment when, according to Defendant, Plaintiff did not report any sexual harassment until August 1997. This argument is likewise tied to the issue of whether Defendant had actual or constructive notice of any sexual harassment prior to August 1997. If Defendant had such notice of sexual harassment, Plaintiff testified in her deposition that she complained about the sexual harassment to management, a procedure in compliance with Defendant's open door policy. App. #1 at 18; Ex. N at 10, 13, 33, 35, and 53. I find that summary judgment is inappropriate on this ground as well. In sum, Defendant's motion for summary judgment is not well taken and will be denied.

Wherefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment, filed October 29, 1999 *(Doc. 15)* is hereby **denied**.

DATED this 10th day of February, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff: Todd M. Ackley
Kirtland, New Mexico

Counsel for Defendant: Mark D. Jarmie
Albuquerque, New Mexico

Linda A. Whittaker
Wal-Mart Stores, Inc.
Wal-Mart Legal Team
Bentonville, Arkansas